UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                   :

EQUAL EMPLOYMENT OPPORTUNITY :
COMMISSION,                          :        CASE NO. 1:14-CV-02011
                                   :
               Plaintiff,        :
                                   :

v.                                  :        OPINION AND ORDER
                                 :        [Resolving Doc. 21]

DUNECRAFT, INC.,                :
                                   :
              Defendant.     :
                                   :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff the Equal Employment Opportunity Commission ("EEOC") alleges that Defendant DuneCraft, Inc. ("DuneCraft") discriminated and retaliated against its former employee, Kevin Marken, in violation of the Age Discrimination in Employment Act ("ADEA").[1] DuneCraft moves for summary judgment on all claims.[2] For the following reasons, DuneCraft's motion is **DENIED**.

## I. Background

The EEOC is charged with enforcing the ADEA.[3] It brings three claims against DuneCraft, an Ohio-based company that makes terrariums and other science-theme toys. Marken, the charging party, was a logistics and accounting manager for DuneCraft from May 1, 2009, to October 4, 2012. Marken was 49 when he started at DuneCraft and 52 when he was fired.[4]

The EEOC alleges that Grant Cleveland, DuneCraft's owner and CEO, frequently and

---

[1] Doc. 1. *See* 29 U.S.C. § 626(b).
[2] Doc. 21.
[3] 29 U.S.C. § 626(b). DuneCraft admits that it is an employer engaged in an industry affecting interstate commerce and is thus covered by the ADEA. Doc. 8 at 2.
[4] Doc. 1.

Case No. 1:14-CV-02011
Gwin, J.

publicly ridiculed Marken with age-based criticism. As a result, the EEOC first alleges that

Cleveland subjected Marken to a hostile work environment based on Marken's age in violation of

Section 4(a)(1) of the ADEA.[5] Second, the EEOC alleges that Marken was eventually fired because

of his age, also in violation of Section 4(a)(1). Third, the EEOC alleges that DuneCraft violated the

anti-retaliation provision of the ADEA[6] because it fired Marken for complaining about age-based

harassment.[7]

DuneCraft repeatedly asserts that "[t]here is no evidence that Marken was ever subjected to

age-related harassment."[8] But the EEOC submits affidavits and deposition testimony to the contrary.

Joe Ploskonka, a former Shipping Logistics manager at DuneCraft, states in an affidavit that

between 2008 and 2011, "Cleveland regularly belittled Marken, calling him 'old and slow'" within

the earshot of half a dozen employees. According to Ploskonka, Cleveland regularly told Marken he

worked too slowly because of his age. Ploskonka says Marken was a diligent and effective worker.[9]

Cleveland's former Executive Assistant, Amber Scarsella, states that between 2009 and 2010,

Cleveland consistently made derogatory comments to Marken about his age and called him "the old

man" during staff meetings. Further, Cleveland once told Scarsella that he paid Marken less than a

comparable employee to induce Marken to quit, "because [Marken] is an old man and doesn't fit into

---

[5] 29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer--(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.").

[6] 29 U.S.C. § 623(d) ("It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section.").

[7] Doc. 1 at 3-6.

[8] Doc. 21 at 10.

[9] Doc 22-8.

Case No. 1:14-CV-02011
Gwin, J.

what [I] want in [my] office." Scarsella also praises Marken's work output and work ethic.[10/]

Danielle Calabrese, another Executive Assistant to Cleveland, submits an affidavit with similar facts. She adds: "At least a dozen times I heard Cleveland state, in reference to Marken, that he was 'getting closer and closer to firing the old guy.'" Cleveland allegedly told Calabrese not to interview new candidates for DuneCraft unless they were twenty-one to twenty-seven years old.[11/]

In his deposition, Marken says that Cleveland repeatedly made derogatory comments to him about his age, calling him "old and slow," "old man," and "the slow guy." Cleveland allegedly told Marken he would need a retirement account, as he would probably be retiring soon. Marken says he repeatedly complained to Cleveland about these comments, and asked Cleveland to stop.[12/]

Cleveland vehemently denies ever making derogatory comments to Marken.[13/] DuneCraft submits affidavits from Cleveland and others in support of this argument.  DuneCraft maintains that Marken was fired because he worked poorly with others, received poor work evaluations, and racked up avoidable fines for late deliveries of DuneCraft products.[14/] In support, DuneCraft points to a November 2011 written warning Marken received detailing his poor work performance.[15/] Additionally, DuneCraft points to first quarter reviews for 2012, in which Marken received the lowest score of any DuneCraft employee.[16/]

DuneCraft's former Operations Manager, Andrew Johnson, alleges that on October 3, 2012,

---

[10/]Doc. 22-9.
[11/]Doc. 22-10.
[12/]Doc. 22-4 at 10-13.
[13/]Doc. 21-9; Doc. 21-11.
[14/]For a list of reasons for Marken's termination (delivered to Marken on October 30, 2011) see Doc. 21-1.
[15/]Doc. 21-3.
[16/]Doc. 21-4.

Case No. 1:14-CV-02011
Gwin, J.

Marken attempted to "sabotage" the company.[17] Marken allegedly knew that DuneCraft did not have enough inventory to fill an upcoming order, but deliberately withheld that information until it was too late to ship the order on time.

That evening, Johnson says he called Cleveland, who was away on a business trip, to discuss the matter. Cleveland told him, "You're in charge . . . you make the decision on what to do."[18] The next day, October 4, 2012, Johnson told Marken he was fired while Cleveland was still out of the office.[19] Johnson says he made the decision to fire Marken alone, though he had Cleveland's authorization to do so.[20] Johnson wrote up a report about the sabotage episode, but not until several weeks after Marken left DuneCraft.[21]

Marken apparently did not believe Johnson had the authority to fire him, so the two called Cleveland. Cleveland heard Johnson and Marken argue over who was to blame.[22] Cleveland concluded that Johnson was "negligent" in not ensuring inventory was ready, but characterized Marken's conduct as "sabotage."[23]

Marken pleaded with Cleveland not to be terminated.[24] According to Cleveland, "Kevin wanted to know if he was really fired, and I said yeah, you're really fired."[25] Cleveland explained that between June and October 2012, Marken's performance continued to deteriorate on a daily

---

[17]/Doc. 21-10.
[18]/Doc. 22-3 at 8.
[19]/Doc. 22-2 at 20.
[20]/Doc. 22-3 at 8.
[21]/Doc. 21-8.
[22]/Doc. 21-2 at 230.
[23]/Doc. 22-2 at 17.
[24]/Doc. 21-2 at 230.
[25]/Id.

Case No. 1:14-CV-02011
Gwin, J.

basis, culminating in his termination.[26]

DuneCraft maintains that the Court should strike the affidavits that the EEOC has used to oppose summary judgment because they would not be admissible at trial.[27] But "because the burden of proving that there is no genuine issue of material fact rests on the moving party, the opposing party is entitled to all of the favorable inferences that reasonably may be drawn from the papers before the court."[28]

DuneCraft, seemingly at random, labels various statements as "irrelevant, improper, and heasay."[29] Yet sworn testimony about what DuneCraft employees observed during their employment would be admissible at trial.[30] Statements from a party opponent    namely Cleveland, as CEO and representative of DuneCraft    are not hearsay and are also admissible.[31] The affidavits set forth "more than rumors, conclusory allegations and subjective beliefs," so the Court can consider them in ruling on summary judgment.[32]

Some of the affidavits contain irrelevant information about Cleveland's behavior and have no clear connection to the allegations of age discrimination. But the Court will not strike entire affidavits simply because some information in them is extraneous. DuneCraft generally questions the motivations and knowledge of the affiants. But these arguments go to the weight of the evidence offered, not to its admissibility. The Court will not ignore the affidavits simply because DuneCraft believes the allegations in them are untrue.

---

[26]/Doc. 22-2 at 14.
[27]/Doc. 23 at 5.
[28]/10B Charles Alan Wright & Arthur A. Miller, Federal Practice & Procedure, § 2738 (3d ed.).
[29]/Doc. 23 at 5.
[30]/Fed. R. Evid. 602.
[31]/Fed. R. Evid. 801(d)((2)(A).
[32]/*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992).

Case No. 1:14-CV-02011
Gwin, J.

## II. Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[33] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[34] Once the moving party has done so, the non-moving party must set forth specific facts in the record  not its allegations or denials in pleadings   showing a triable issue.[35] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[36] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[37]

## III. Analysis

### A. Hostile Work Environment

"[A] plaintiff may advance a hostile-environment claim under the ADEA."[38] To establish the prima facie case for such a claim, an employee must demonstrate "1. The employee is 40 years old or older; 2. The employee was subjected to harassment, either through words or actions, based on age; 3. The harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and

---

[33] Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[34] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[35] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[36] *Id.* at 586.
[37] *Coble v. City of White House, Tenn.*, 634 F.3d 865, 868–69 (6th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372 (2007)).
[38] *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996).

Case No. 1:14-CV-02011
Gwin, J.

4. There exists some basis for liability on the part of the employer."[39]

DuneCraft argues that Marken was never subjected to any age-based harassment. But Marken's deposition and the supporting affidavits could convince a reasonable jury that he was. DuneCraft next argues that the alleged comments are too abstract, ambiguous, and isolated to constitute a hostile work environment. But Marken alleges he endured direct and demeaning comments about his age on a regular basis for a term of years.[40] A reasonable jury could thus believe that Marken's workplace was "permeated with 'discriminatory intimidation, ridicule or insult' sufficiently severe or pervasive to alter the conditions of employment."[41]

Finally, DuneCraft argues that the comments, even if actually made, had no negative effect on Marken's ability to work. Marken's deposition contradicts this assertion. Marken states that his treatment at Cleveland's hands "was very stressful, it was hurtful, it slowed me down in my work. I know that I probably made mistakes based on how he would get on me . . . ."[42]

A reasonable jury could believe Marken was subjected to a hostile work environment. Thus, DuneCraft's motion for summary judgment on this claim is **DENIED**.

**B. Age-Based Termination**

The EEOC says circumstantial evidence proves Marken was fired because of his age. "To set forth a *prima facie* case of age discrimination using circumstantial evidence, a plaintiff must establish the four elements of the well-known *McDonnell Douglas* test: 1) that he was a member of

---

[39] *Id*. at 834-35.

[40] *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993) ("Age-related comments referring directly to the worker may support an inference of age discrimination.").

[41] *Hawkins v. Anheuser Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).

[42] Doc. 21-4 at 20.

-7-

Case No. 1:14-CV-02011
Gwin, J.

a protected class; 2) that he was discharged; 3) that he was qualified for the position held; and 4) that he was replaced by someone outside of the protected class."[43]

DuneCraft argues that Marken did not remain qualified for his position.[44] DuneCraft points to Marken's written warnings and low ratings on performance reviews. Marken counters that he was recruited for the job with DuneCraft and has worked in the relevant industry since 1995. Some affidavits label Marken as incompetent; others describe him as a hard worker and effective team member. A jury, not the Court, should decide which account is more credible. For the purposes of surviving summary judgment, Marken satisfies the lenient standard of demonstrating that he was at least qualified for his job.[45]

Marken was fired and was over forty at the time. Additionally, a younger person replaced Marken. DuneCraft employee Fithriana Lestari states that she took over Marken's position when she was thirty-one years old.[46] Marken has thus made a out *prima facie* case.

Thus, "the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. If the employer meets this burden, the burden of production shifts back to the plaintiff to show that the employer's explanation was a mere pretext for intentional age discrimination."[47] DuneCraft meets its burden, as it provides a litany of reasons for firing Marken that are unrelated to age. DuneCraft maintains Marken worked poorly with

---

[43]/*Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009).

[44]/Doc. 21 at 8.

[45]/*Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 76 (6th Cir. 2003) (""The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field.").

[46]/Doc. 22-7 at 4.

[47]/*Schoonmaker v. Spartan Graphics Leasing*, LLC, 595 F.3d 261, 264 (6th Cir. 2010) (internal citation omitted).

Case No. 1:14-CV-02011
Gwin, J.

others, did not improve his work after warnings, and cost the company tens of thousands of dollars in fines for late shipping.[48]

In response, "[a] plaintiff can demonstrate pretext by showing that the proffered reason . . . did not actually motivate the defendant's challenged conduct."[49] The alleged frequency and specificity of Cleveland's age-related comments provide evidence that Marken's age, not his work performance, may have actually motivated the firing. However, DuneCraft maintains that Johnson, not Cleveland, actually fired Marken. DuneCraft says Johnson was the relevant decision maker for Marken's termination, making Cleveland's alleged comments irrelevant.

But Cleveland was directly involved in Marken's termination. Cleveland spoke to Johnson about Marken on October 3, 2012, and spoke to Marken and Johnson together the following day. Cleveland heard Marken try to defend himself and plead for his job. Cleveland told Marken that he was, in fact, fired. The facts surrounding exactly how Marken was terminated are contested and convoluted. Cleveland was certainly "connected with the decision[] to demote or terminate" Marken.[50] A reasonable jury could find that Cleveland, as CEO, made Marken's firing official. Thus, DuneCraft's argument that Johnson acted completely alone in firing Marken is unavailing.

Further, evidence exists to support a jury finding that the reasons for firing Marken were pretextual. Allegedly, Cleveland said at least a dozen times he was "getting closer and closer to firing the old guy [Marken]." Cleveland allegedly called Marken a "useless old man who doesn't listen to anything and is constantly screwing up," and blamed Marken for mistakes because he was "old and

---

[48]/Doc. 21 at 9.
[49]/*Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).
[50]/*Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998).

-9-

Case No. 1:14-CV-02011
Gwin, J.

losing his memory." [51] Cleveland referred to Marken as a failed experiment in hiring an old person, and that people over forty were "too hard to manage" and "too hard to mold." [52] When taken as a whole, a reasonable jury could believe that the stated reasons for firing Marken served to mask age-based discrimination. [53]

Furthermore, inconsistent accounts regarding Marken's firing provide additional evidence of pretext. [54] On October 5, 2012, just a day after Marken was fired, Cleveland wrote Marken a letter of recommendation in which he praised Marken's work ethic, attention to detail, and his efforts which "sav[ed] the company thousands of dollars." [55]

But several weeks later, on October 30, 2012, Cleveland sent Marken a private memo detailing numerous shortcomings that caused him to be fired. The comment "Not shipping all orders that could have been shipped," is starred on the page. However, the alleged October 3, 2012, sabotage incident is not mentioned. [56] In his deposition, Cleveland states that Marken was fired for the sabotage incident. [57] But in moving for summary judgment, DuneCraft maintains that there were thirteen independent reasons for Marken's termination. [58] A reasonable jury could find evidence of pretext based on perceived conflict between these explanations.

---

[51]/Doc. 22-9.

[52]/Doc. 22-10.

[53]/*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355-56 (6th Cir. 1998) ("Moreover, when assessing the relevancy of an allegedly biased remark where the plaintiff presents evidence of multiple discriminatory remarks or other evidence of pretext, we do not view each discriminatory remark in isolation, but are mindful that the remarks buttress one another as well as any other pretextual evidence supporting an inference of discriminatory animus.").

[54]/*Cicero v. Borg Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002) ("Shifting justifications over time calls the credibility of those justifications into question.").

[55]/Doc. 22-12.

[56]/Doc. 21-1.

[57]/Doc. 22-2 at 20.

[58]/Doc. 21 at 4.

-10-

Case No. 1:14-CV-02011
Gwin, J.

Overall, the EEOC could convince a reasonable jury that DuneCraft's proffered reasons for firing Marken were pretextual. Therefore, DuneCraft's motion for summary judgment on the termination claim is **DENIED**.

## C. Retaliatory Termination

The EEOC further alleges that Marken was terminated because he complained to Cleveland and asked him to stop the age-based harassment. To make a *prima facie* case for retaliation, the EEOC must show  "(1) that [Marken] engaged in a protected activity; (2) that the defendant had knowledge of [Marken's] protected conduct; (3) that the defendant took an adverse employment action towards [Marken]; and (4) that there was a causal connection between the protected activity and the adverse employment action."[59] "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met."[60]

DuneCraft asserts that "there is no evidence to support Marken's claim that he engaged in protected activity. Marken never complained about unwelcome age-related comments."[61] But Marken, in his deposition, says that he complained about the comments directly to Cleveland during a June 2012 performance review, and renewed his verbal complaints a few times a month until he was fired.[62] This sworn statement is evidence in and of itself. It creates a genuine issue of material fact as to whether such complaints occurred.

DuneCraft next argues that no causal connection exists between Marken's complaints and

---

[59]/*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002)).
[60]/*Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).
[61]/Doc. 21 at 15.
[62]/Doc. 22-4 at 15-17.

Case No. 1:14-CV-02011
Gwin, J.

his firing. It again says Johnson, not Cleveland, actually fired Marken, and asserts that Johnson did not know about Marken's complaints.[63/] As explained above, Cleveland was directly involved in Marken's firing. Marken says he regularly complained to Cleveland in the weeks leading up to his termination. Cleveland's alleged earlier statement that he was getting closer and closer to firing Marken provide an indication of potential retaliatory conduct. The EEOC shows a plausible causal connection between Marken's complaints and his firing.[64/] The *prima facie* case for ADEA retaliation is therefore satisfied.

Thus, DuneCraft's motion for summary judgment on the retaliation claim is **DENIED**.

### IV. Conclusion

For the reasons above, the Court **DENIES**, in full, DuneCraft's motion for summary judgment.

IT IS SO ORDERED.
Dated: May 4, 2015                           s/           *James S. Gwin*
                                             JAMES S. GWIN
                                             UNITED STATES DISTRICT JUDGE

---

[63/]Doc. 23 at 11-13.

[64/]*Mickey v. Zeidler*, 516 F.3d at 525 ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.").